UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:16-CR-055 |
| | ) | |
| JAMES CALVIN HALE | ) | |

## MEMORANDUM AND ORDER

In November 2017, this Court sentenced the defendant, as a career offender, to a 160-month term of imprisonment for conspiring to distribute and possess with the intent to distribute methamphetamine. The defendant is presently housed at USP Terre Haute with a scheduled release date of October 30, 2028. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 20, 2020).

In May 2020, the defendant filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 977]. Because nothing in the record at that time indicated that the defendant had exhausted his administrative remedies as required by § 3582(c)(1)(A), the motion was denied. [Doc. 978].

Now before the Court is the defendant's *pro se* motion for reconsideration [doc. 983], which the Court construes as a renewed motion for compassionate release. Attached to the motion is documentation that the defendant did in fact submit a compassionate release request to the warden of his facility, which was denied on June 10, 2020.

The United States has responded in opposition to the renewed motion. [Doc. 994]. The defendant has not submitted a reply within the time allowed by this court's Local Rules. For the reasons stated below, the defendant's renewed motion for compassionate

release will be denied.

## I. BACKGROUND

As noted, the defendant has renewed his motion for immediate compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018. In his original motion, the defendant sought release based on burns, neuropathy, back pain, depression, PTSD, high blood pressure, and his parents' health. In his renewed motion, the defendant also further discusses the current COVID-19 pandemic.

## II. DISCUSSION

Section 3582(c)(1)(A)(i) allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion

on his behalf.  *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).  Beyond this change, the statute still applies the same requirements to a defendant's motion for compassionate release as previously applied to motions by the BOP Director.  *See, e.g.*, *United States v. Beck*, 425 F. Supp. 3d 573, 578-79 (M.D.N.C. 2019).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes.  *See United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488, at *3 (S.D. Ind. May 9, 2019).  While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction.  *Id.* at *2 (citations omitted).  Moreover, the Court has no reason to believe that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.  *See id.* (concluding likewise).

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A)(i), the compassionate release analysis requires several findings.  First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement."  U.S.S.G. § 1B1.13(1)(A), (3).  Second, the Court must determine whether a movant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable."  U.S.S.G. § 1B1.13.

### A. Exhaustion

In this case, the record demonstrates that the defendant has previously asked the BOP to file a compassionate relief motion on his behalf, on or prior to June 10, 2020. Thirty days have passed since that request was received by the warden of his facility. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

#### 1. Extraordinary and Compelling Reasons

The Application Notes to guideline 1B1.13 provide, in material part:

1. Extraordinary and Compelling Reasons.— ... [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant. —

. . .

(C) Family Circumstances. —

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.— As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Court construes the defendant's renewed motion as relying on subsections (A)(ii)(I), (C), and (D). He cites personal health concerns, his parents' health, and the COVID-19 pandemic.

The Court finds that subsection (C) of application note one to U.S.S.G. § 1B1.13 does not apply to the health of a defendant's parent. That guideline policy statement is expressly restricted to: (1) the death or incapacitation of the caregiver of a defendant's minor child or children; and (2) the incapacitation of a defendant's spouse or registered partner for whom a defendant would be the only available caregiver. A defendant's parent is included in neither of these categories. Thus, subsection (C) does not apply.

Turning to subsection (A)(ii)(I), the record in this case contains no supporting documentation as to the severity of the defendant's current medical conditions or their impact on his present functioning. The Court is therefore unable to find that the defendant's

5

medical conditions substantially diminish his ability to provide self-care within the prison environment, as required by guideline 1B1.13's policy statement.

Lastly, the Court concludes that subsection (D) ("there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)") is also not satisfied in this case.[1] The defendant's parents' health, standing alone, is insufficient. Subsection (C) expressly limits the familial relationships to which the policy statement applies. As such, the "catch-all" subsection (D) should not be used to sidestep the policy statement's express familial limitations found in subsection (C). Additionally, there is no documentation before the Court as to the severity of his parents' health issues. In any event, the defendant has not shown or even argued that he would be his parents' only available caregiver. For example, according to the Presentence Investigation Report ("PSR"), the defendant has two siblings. [Doc. 509, ¶ 65]; *see, e.g., United States v. Marshall*, No. 3:16CR-00004-JHM, 2020 WL 114437, at *3 (W.D. Ky. Jan. 9, 2020) (denying compassionate release under subsection (D) where the record did not show that the movant was his relative's only available caregiver) (collecting cases).

Returning to the defendant's own health, the Court does note that medical records summarized in his 2017 PSR indicate that the defendant suffered significant scars and burning from a 2005 fire. Those records also mention the defendant's self-reports of: high

---

[1] Although this subsection begins with the modifier "[a]s determined by the Director of the Bureau of Prisons," most courts considering the issue post-First Step Act have concluded that the presence of "extraordinary and compelling circumstances" under this subsection can be determined by the BOP *or* by the court. *See, e.g.*, *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (collecting cases).

6

blood pressure (at that time "unregulated"); neck pain; right knee and back pain; cavities, "respiratory issues"; neuralgia; edema; occasional difficulty walking; and PTSD. [Doc. 509; ¶¶ 67-72]. These conditions, however, were not at that time severe enough to prevent the defendant from participating in the instant methamphetamine conspiracy for almost two years. [*Id.*, ¶ 9]. Nor did the defendant's 2005 burns (from which many of his health problems purportedly stem) keep the defendant from accruing *twelve* separate state convictions postdating the fire. [*Id.*, ¶¶ 36-47].

Lastly, the Court notes that, at the defendant's prison, two inmates are currently positive for COVID-19, six others have recovered, and one has died. There have been no positive tests among the prison staff. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 20, 2020). While one fatality is obviously one too many, overall the number of positive cases does not indicate that the virus is running rampant through the defendant's facility. It appears that that the preventative measures being taken by the Bureau of Prisons, as described by the United States in its response brief, are having an effect. *See, e.g., United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020) (medically managed serious health conditions, paired with a generalized fear of COVID-19, fell short of "extraordinary and compelling reasons" justifying compassionate release).

Having considered the arguments presented by the defendant, individually and in combination, the Court does not find extraordinary and compelling reasons justifying the requested compassionate release. The defendant's motion will therefore be denied.

## 2. Danger to Any Other Person or to the Community

In the alternative, the Court also finds that the defendant has not shown that he would not be a danger if released. Guideline 1B1.13 provides that compassionate release is only appropriate where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(2). Section 3142(g) outlines the factors the Court must consider in determining whether a defendant should be detained pending trial. Specifically, § 3142(g) provides:

> (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Court has considered the above-listed factors. As discussed above, the defendant's health did not hamper his nearly two-year participation in the instant conspiracy, nor did it keep him from incurring twelve state criminal convictions between 2005 and 2014. Most of those crimes were committed while the defendant was on probation. Further, as noted, the defendant was sentenced in this Court as a career offender and he has a lengthy substance abuse history. These facts leave the Court unable to find that the defendant would not pose a danger to the safety of another person or the community if released. For this additional reason, the motion must be denied.

### 3. Section 3553(a) Factors

Because the defendant has not demonstrated extraordinary and compelling reasons justifying his release, and because the Court is not satisfied that he would not pose a danger if released, the Court finds it unnecessary to engage in a lengthy discussion of the 18 U.S.C. § 3553(a) factors in this case. The Court adds only that the majority of the defendant's sentence remains unserved. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("Despite Kincaid's assertion that the amount of time served is not a proper basis for denying compassionate release, the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). As in *Kincaid*, a substantial sentence reduction in this case would not reflect the extreme seriousness of the offense of conviction, would not promote respect for the law or afford adequate deterrence, and would not adequately protect the public from future crimes. *See* 18 U.S.C. § 3553(a)(2).

## III. CONCLUSION

For the reasons stated herein, Defendant's renewed motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [doc. 983] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge