UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:16-CR-00055-DCLC-CRW-22 |
| | ) | |
| JAMES CALVIN HALE | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant James Calvin Hale's supplemental motions for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) [Docs. 1207, 1209, 1211, 1215, 1219]. Hale moves for the Court release him so that he may care for his father, who entered hospice care in March 2026. The Government opposes the motion. [Doc. 1222]. For the reasons that follow, the motions are **DENIED**.

## BACKGROUND

Hale pled guilty to conspiring to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B) [Doc. 390]. He qualified as a career offender and had accumulated seventeen criminal history points before the age of forty [Doc. 917]. The Court calculated an advisory guideline range of 188 to 235 months and, on October 31, 2017, imposed a below-range sentence of 160 months followed by five years of supervised release [Docs. 862, 917]. Hale has served approximately 113 months, or just over seventy percent of his full term. His projected release date is January 14, 2029, and he becomes eligible for home detention on July 14, 2028 [Doc. 1222-2].

The Court previously denied Hale's motions for compassionate release, finding that he had established no extraordinary and compelling reason and that the § 3553(a) factors weighed against a reduction [Doc. 996]. A further motion premised on his own medical conditions, the adequacy of his medical care, and his rehabilitative efforts remains pending [Docs. 1106, 1131]. In March

2026, Hale moved to supplement that motion based on his father's health [Doc. 1207], and he has since filed several supplements [Docs. 1209, 1211, 1215, 1219]. Counsel filed hospice records under seal on September 4, 2026 [Doc. 1220].

Those records reflect the following. Hale's father was admitted to hospice care on March 17, 2026, with a prognosis of six months or less. He has been diagnosed with hypertensive heart disease without heart failure, chronic obstructive pulmonary disease, and kidney disease. As of August 24, 2026, he requires assistance with several activities of daily living, utilizes a cane, and experiences shortness of breath. His pain and other symptoms are reported as well controlled. He receives hospice services and twelve hours per week of assistance through the TennCare CHOICES program.

Hale has two siblings [Doc. 996]. His sister states that she is unavailable to be a caretaker because she lives more than an hour away and works forty hours per week. His brother states that he is "extremely busy" and reports having had no contact with their father for four years [Doc. 1219-1]. Their paternal aunt assists as she is able [Doc. 1219-1].

## LEGAL STANDARD

A court may reduce a term of imprisonment under § 3582(c)(1)(A) only if the defendant has satisfied the statute's exhaustion requirement, only if extraordinary and compelling reasons warrant a reduction, only if the reduction is consistent with applicable policy statements of the Sentencing Commission, and only after considering the factors in 18 U.S.C. § 3553(a). *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021). The defendant bears the burden of proving these are met. *Id.* A court may deny relief on any one of these grounds without addressing the others. *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021).

The applicable policy statement provides that family circumstances may constitute an extraordinary and compelling reason where there is "[t]he incapacitation of the defendant's parent

when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C).

## ANALYSIS

### A. Exhaustion

The Government asserts that Hale did not present a request that included his father's circumstances to the Bureau of Prisons and that § 3582(c)(1)(A) requires issue-specific exhaustion. However, the record shows that the Defendant filed a request for compassionate release on June 12, 2026, based upon his father's condition [Doc. 1223-1]. The warden denied that claim on June 17, 2026 [*Id.*].

A defendant may file his own motion under § 3582(c)(1)(A) after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." The thirty-day path is an independent one; a prisoner has "the option to take [his] claim to federal court within 30 days, no matter the appeals available to [him]." *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020). Thirty days have elapsed from the warden's receipt of Hale's request on July 12, 2026. Thus, Hale has exhausted his administrative remedies as to his family circumstances.

### B. Hale has not shown that he is the only available caregiver

The Government disputes that Hale's father is incapacitated within the meaning of § 1B1.13(b)(3)(C), noting that he ambulates with a cane, manages many of his own affairs, and has symptoms that are well controlled. The Court does not resolve that question. For the purposes of this motion, the Court will assume without deciding that Hale's father is incapacitated.

Section 1B1.13(b)(3)(C) requires that the defendant "would be the only available caregiver" for his parent. It is not enough that the defendant would be a capable or willing caregiver, or even the best one; he must be the *only* one. And the Commission was specific with its wording. For the caregiver of a minor child, the guideline asks whether that caregiver has died or become incapacitated, § 1B1.13(b)(3)(A); for a parent, it asks whether anyone other than the defendant is available, § 1B1.13(b)(3)(C). This difference shows the question is a practical one when it comes to parental caretaking: whether someone other than the defendant can realistically provide the care the parent needs. The defendant bears the burden of carrying that burden. showing that *no one* else can. *United States v. Mathews*, No. 2:19-cr-41, 2023 WL 5924411, at *3 (S.D. Ohio Sept. 12, 2023); *see also United States v. Robelo-Galo*, 166 F.4th 1311, ___ (11th Cir. 2026).

Hale has not carried that burden. His sister cites the distance to their father's residence and her full-time employment as reasons why she should be considered unavailable to care for their father. Those are the ordinary burdens borne by nearly every adult child of an ailing parent, and Hale would bear them too if released: he, like his sister, would need to support himself while arranging his life around his father's care. They do not render her unavailable. *Cf. Robelo-Galo*, 166 F.4th at ___ (affirming finding that an adult relative who lived four hours away, worked, and had no car was an available caregiver). A caregiver is not unavailable merely because caregiving must be balanced against other commitments. *Id.* at 1317.

The Court will assume, without deciding, that Hale's brother, who reports no contact with their father in four years, is not an available caregiver. *Id.* (a longstanding estrangement may weigh against availability). The assumption does not help Hale, because his sister is available, and the guideline requires that Hale be the *only* available caregiver.

### C. The § 3553(a) factors independently foreclose relief

Even if Hale had established an extraordinary and compelling reason, the Court would

decline to reduce his sentence. Hale participated in a methamphetamine conspiracy for nearly two years. His criminal history was extensive: seventeen criminal history points and a career-offender designation before the age of forty. The Court accounted for the mitigating features of his case at sentencing, imposing 160 months against a range of 188 to 235 months.

The Court may also consider Hale's conduct since his sentencing. *Pepper v. United States*, 562 U.S. 476, 490-93 (2011). That record is at best mixed and, in one respect, troubling. Hale completed drug education in 2019 and a nonresidential drug treatment program in December 2023, and he participates in medication-assisted treatment. But, Hale also incurred disciplinary sanctions on multiple occasions, has dropped out of GED coursework, is rated non-promotable with unsatisfactory progress, and failed out of or withdrew from the residential drug abuse treatment program this Court recommended at sentencing [Docs. 86, 1222-3]. The Bureau of Prisons continues to assess him at a medium risk of recidivism.

Weighing the seriousness of the offense, Hale's history and characteristics, the need for deterrence and protection of the public, and his institutional record against the hardship his family now faces, the Court concludes that a reduction is not warranted. § 3553(a)(2)(A)-(C).

## IV. CONCLUSION

The Defendant's supplemental motions for a reduction in sentence [Docs. 1207, 1209, 1211, 1215, 1219] are **DENIED**.

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge